IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

FLOYD E. MAY, JR., )
)
        Plaintiff, )
)
v. ) 1:15CV747
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security, )
)
        Defendant. )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

    Plaintiff Floyd E. May, Jr. ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

    Plaintiff protectively filed his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") on March 15, 2012, alleging a disability onset date of April 1, 2011. (Tr. at 12, 183-93.)[1] His applications were denied initially (Tr. at 59-76, 104-14.) and upon reconsideration (Tr. at 77-100, 118-35). Thereafter, Plaintiff

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #9].

requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 136-37.) Plaintiff, along with his attorney and an impartial vocational expert, attended the subsequent hearing on February 5, 2014. (Tr. at 12.)

The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 25.) On July 13, 2015, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. (Tr. at 14.) Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: "chronic pain syndrome, degenerative disc disease of the lumbar spine with spondylosis, lumbosacral radiculitis, anxiety, depression, and obesity." (Tr. at 15-18.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 18-20.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work with the following additional restrictions:

> he can occasionally engage in balancing, stooping, kneeling, crouching, crawling, and climbing of stairs and ramps, but cannot climb ropes, ladders, or scaffolds.

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

> He should avoid concentrated exposure to workplace hazards. The claimant requires the capacity to alternate between sitting and standing every thirty to forty-five minutes. He should also have no requirements to perform repetitive overhead reaching. The claimant has the mental residual functional capacity to perform simple, routine, repetitive tasks. He can have occasional contact with the general public and frequent, but not continuous, contact with coworkers and supervisors for the completion of job tasks. He can handle changes in a routine work setting.

(Tr. at 20-21.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not return to any of his past relevant work. (Tr. at 23.) However, based on the vocational expert's testimony, the ALJ determined at step five, that, given Plaintiff's age, education, work experience, and RFC, he could perform other jobs available in the national economy. (Tr. at 24-25.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 25.)

Plaintiff now argues that the ALJ erred in (1) failing to perform a proper listing analysis at step three and (2) finding that he has the RFC to perform a limited range of light work. Additionally, Plaintiff challenges the Appeals Council's failure to remand his claims in light of new evidence. (Pl.'s Br. [Doc. #13] at 3.)

A.  Listing Analysis

At step three of the sequential analysis, the ALJ considers whether any impairment meets or equals one or more of the impairments listed in Appendix I of the regulations. Notably, in analyzing the evidence at step three, an ALJ is not required to explicitly identify and discuss every possible listing; however, she must provide sufficient explanation and analysis to allow meaningful judicial review of her step three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. Bailey v. Colvin, No. 1:14CV303, 2015 WL 5227646, at *3 (M.D.N.C. Sept.

8, 2015) (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)). "Where such evidence exists but is rejected without discussion, 'insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings.'" Id. (citations omitted).

Here, the ALJ found that Plaintiff's impairments did not meet or equal any of the Listings, and "gave particular consideration to listings 1.04 regarding disorders of the spine, 12.04 regarding affective mood disorders, and 12.06 regarding anxiety-related disorders." (Tr. at 18.) Regarding Plaintiff's spine disorder, the ALJ specifically found as follows:

> To meet listing 1.04, there must be medical evidence in the record showing that a herniated disc resulted in the compromise of a nerve root or the spinal cord with: (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor and sensory or reflex loss, and, if the lower back is involved, a positive straight-leg raising test; (2) spinal arachnoiditis; or (3) lumbar spinal stenosis, resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b. In this case, there is no evidence of a loss of effective ambulation. The claimant has repeatedly been described by treating and examining care providers as having a gait and station within normal limits and being able to perform heel and toe walks without difficulty. There is further no evidence in the record or other findings equivalent in severity to meet this listing.

(Tr. at 19.)

As the ALJ's analysis reflects, to meet Listing 1.04, a claimant first must show a disorder of the spine, such as a "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [and/or] vertebral fracture . . . resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 1.04. If a claimant meets these requirements, he must then show that he meets one of the three additional sets of criteria set out in Part A, Part B, or Part

7

C of the listing. Significantly, only Part C requires that a claimant demonstrate an inability to ambulate effectively. In the present case, however, the ALJ cites Plaintiff's ability to walk without apparent difficulty as her sole basis for finding that Plaintiff does not meet Listing 1.04. (Tr. at 19.) In doing so, the ALJ fails to address whether Plaintiff meets Parts A or B of the listing.

Defendant suggests that the ALJ's omission is inapposite, as Plaintiff did not satisfy all of the required criteria of Listings 1.04A or B. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). In terms of Listing 1.04B, Defendant is correct, given that the record clearly lacks any evidence of spinal arachnoiditis. Listing 1.04A, in contrast, presents a much closer case. Accordingly, the issue here, as in Radford, is whether there was sufficient evidence in the record to trigger the potential applicability of Listing 1.04A, and, if so, whether the ALJ's explanation and analysis, as a whole, is sufficient to allow judicial review of the step three determination for that listing.

As noted above, Listing 1.04A requires evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor and sensory or reflex loss, and, if the lower back is involved, a positive straight-leg raising test. In arguing that the record in the present case lacks evidence supportive of Listing 1.04A, Defendant cites medical records in which Plaintiff had negative straight leg raising tests, had a good range of motion, and had good strength and muscle tone. (Def.'s Br. [Doc. #15] at 9-11.) However, Defendant's recitation of the evidence omits significant contrary findings also

8

included in the record. Indeed, both the record and the administrative decision also recount at least some evidence of all of the criteria set out in Part A of the listing, including nerve root compression (Tr. at 17-18, 386, 400, 403, 472),[4] neuro-anatomic distribution of pain (Tr. at 15, 16, 21, 384, 386, 388, 400, 404-05, 521), limitation of motion of the spine (Tr. at 15, 16, 377, 380, 384, 386, 389, 476, 522), motor and sensory or reflex loss (Tr. at 15, 16, 309, 377, 380, 388, 389, 404, 476, 521-22), and multiple positive straight-leg raising tests (Tr. at 16, 343, 377, 380, 384, 386, 476, 522).

To the extent Defendant may be contending that Plaintiff did not meet all of the requisite criteria simultaneously to satisfy Listing 1.04, the Fourth Circuit has clarified in Radford that "[a] claimant need not show that each symptom was present at precisely the same time—i.e., simultaneously—in order to establish the chronic nature of his condition. Nor need a claimant show that the symptoms were present in the claimant in particularly close proximity. . . . '[A]bnormal physical findings may be intermittent,' but a claimant may nonetheless prove a chronic condition by showing that he experienced the symptoms 'over a period of time,' as evidenced by 'a record of ongoing management and evaluation.'" 734 F.3d at 294 (citations omitted).

---

[4] Plaintiff's medical records note radiculopathy, lumbosacral radiculitis, and foraminal narrowing with disc protrusion. The evidence varies as to the degree that Plaintiff's L3 nerve root is impacted by his disc herniation, with most records indicating that the disc abuts the nerve, but not specifying a level of compression. (See Tr. at 17-18, 23, 472, 540.) However, it also appears that the degree of nerve root encroachment increased during the time period at issue, as Plaintiff's August 2, 2011 lumbar MRI showed a disc "in close proximity to the left extraforaminal L3 nerve root" (Tr. at 366), whereas the same test performed on October 18, 2012 revealed that the same disc abutted the L3 nerve root (Tr. at 540). At least one of Plaintiff's treating physicians, Dr. Spivey, interpreted the MRI as showing "disc extrusion or herniation that impacts the exiting left L3 nerve root, and, without question, would therefore also impact the traversing roots including L4 and L5." (Tr. at 472.) Accordingly, "'there is at least conflicting evidence in the record' as to whether [Plaintiff] satisfied [this requirement of] the listing." Radford, 734 F.3d at 296.

9

Finally, to the extent that Defendant may be contending that substantial evidence nevertheless supports the ultimate conclusion that Plaintiff did not meet Listing 1.04A, the Court will not undertake an analysis that is not reflected in the ALJ's decision. See generally SEC v. Chenery Corp., 332 U.S. 194, 196 (1947). In her decision, the ALJ did not rule out the application of Listing 1.04 on the basis that there was good range of motion or good strength and muscle tone, or based on a conclusion that there was no compromise of the nerve root or nerve root compression. Instead, the ALJ noted only that there was no evidence of loss of effective ambulation, which addresses Listing 1.04C but not 1.04A. Ultimately, the ALJ may well conclude that Plaintiff has not met Listing 1.04A, but that is a determination to be made by the ALJ in the first instance.

Given that Plaintiff has presented "a fair amount of evidence" that he meets Listing 1.04A, the ALJ's failure to adequately explain the reasoning behind her contrary conclusion precludes the Court from undertaking a "meaningful review" of her step three determination. See Radford, 734 F.3d at 296. Radford instructs that where, as here, there is conflicting evidence in the record as to whether the claimant satisfies a Listing, but insufficient analysis or explanation of the issue by the ALJ, remand offers the best course of action. 734 F.3d at 296. Accordingly, the Court recommends remand of this matter to the ALJ. In light of this determination, the Court need not reach the additional issues raised by Plaintiff.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent,

Defendant's Motion for Judgment on the Pleadings [Doc. #14] should be DENIED, and Plaintiff's Motion for Judgment on the Pleadings [Doc. #12] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 7th day of October, 2016.

/s/ Joi Elizabeth Peake
United States Magistrate Judge